IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOE RICKABAUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 08-228J |
| ) | |
| MICHAEL J. ASTRUE, ) | JUDGE GIBSON |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

**GIBSON, J.**

### I. SYNOPSIS

This matter comes before the Court on the parties' cross-motions for summary judgment. Document Nos. 11 & 13. The Court has jurisdiction in this case pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the standards applicable under 42 U.S.C. § 405(g). For the reasons that follow, the Plaintiff's motion for summary judgment will be denied, the Defendant's motion for summary judgment will be granted, and the administrative decision of the Commissioner of Social Security ("Commissioner") presently under review will be affirmed.

### II. PROCEDURAL HISTORY

Plaintiff Joe Rickabaugh ("Rickabaugh") applied for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383(f)] on June 13, 2006, alleging disability as of March 20, 2006. R. p. 42. The application was denied by the state agency on August 22, 2006. R. p. 33. Rickabaugh responded on September 19, 2006, by filing a

1

timely request for an administrative hearing. R. p. 38. On September 20, 2007, Rickabaugh appeared before Administrative Law Judge Patricia Henry (the "ALJ") in Johnstown, Pennsylvania. R. p. 164. Because he was unrepresented, Rickabaugh orally requested a continuance. R. pp. 166-170. This request was granted, and the hearing was rescheduled for January 22, 2008. R. p. 171. On that occasion, Rickabaugh appeared with counsel and testified at the hearing. R. pp. 174-198. Testimony was also taken from Mark Heckman ("Heckman"), an impartial vocational expert. R. pp. 198-201. In a decision dated March 14, 2008, the ALJ determined that Rickabaugh was not "disabled" within the meaning of the Act. R. pp. 10-20. The Appeals Council denied Rickabaugh's request for review on July 31, 2008, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. p. 3. Rickabaugh commenced this action on September 25, 2008, seeking judicial review of the Commissioner's administrative decision. Document No. 1. Rickabaugh and the Commissioner filed motions for summary judgment on March 12, 2009, and April 16, 2009, respectively. Document Nos. 11 & 13. These motions are the subject of this memorandum opinion.

### III. STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated

3

rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *SEC v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

4

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV. DISCUSSION

In her decision, the ALJ determined that Rickabaugh had not engaged in substantial gainful activity since the date of his application. R. p. 15. Rickabaugh was found to be suffering from Hepatitis C, status post thyroidectomy, a history of cocaine abuse, a history of headaches, coronary artery disease, celiac sprue, degenerative disc disease of the lumbar spine, and diabetes with neuropathy. *Id.* Although these impairments were deemed to be "severe" within the meaning of 20 C.F.R. § 416.920(a)(4)(ii), the ALJ concluded that they did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). R. p. 16. In accordance with 20 C.F.R. § 416.945, the ALJ assessed Rickabaugh's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: limited to occasional postural maneuvers, such as stooping, kneeling, crouching, crawling, and climbing on ramps and stairs, ladders, ropes, and scaffolds.

R. p. 16. Rickabaugh was born on August 8, 1958, making him forty-seven years old as of his alleged onset date and forty-nine years old as of the date of the ALJ's decision. R. p. 18. He had the equivalent of a high school education and an ability to communicate in English. *Id.* Given the applicable residual functional capacity and vocational assessments, the ALJ determined that Rickabaugh could not return to his past relevant work as a forklift operator, janitor, car wash

maintenance mechanic or lineman. *Id.* Nevertheless, the ALJ concluded that Rickabaugh could work as a ticket seller, an information clerk, a coupon redemption clerk, a final assembler, a product inspector, or a nut sorter. R. p. 19. Heckman's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B). R. pp. 200-201.

In support of his motion for summary judgment, Rickabaugh argues that the ALJ erred in determining that his impairments did not equal a Listing, in failing to consider the cumulative effect of his impairments, and in determining that he could perform work at the light level of exertion. Document No. 12, pp. 5-13. These issues will be addressed in sequence.

Rickabaugh contends that his impairments meet or medically equal Listings 1.04, 4.00 and 9.00. *Id.*, p. 5. Nevertheless, he does not explain *how* his impairments meet or medically equal those Listings. *Id.*, pp. 5-6. In order to demonstrate that one of his impairments "matches" a Listing, Rickabaugh must show that his impairment meets *all* of the specified medical criteria applicable to that Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* In order to qualify as *per se* disabled by showing that his unlisted impairment or combination of impairments is "equivalent" to a Listed Impairment, Rickabaugh "must present *medical* findings equal in severity" to the criteria contained within the relevant Listing. *Id.* at 531 (emphasis added). He cannot qualify as *per se* disabled merely by showing that the "overall *functional* impact of his unlisted impairment or combination of impairments" is as severe as that of a Listed Impairment. *Id.* (emphasis added). Moreover, during the course of the administrative proceedings, the burden was on Rickabaugh to come forward with evidence establishing his *per se* disability under the criteria contained within the Listings at issue. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

In *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-120 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit explained that an administrative law judge's analysis at the third step of the sequential evaluation process must be sufficiently specific to provide for meaningful judicial review. The situation in *Burnett* concerned an administrative opinion containing only a conclusory statement indicating that a claimant's impairments did not meet or medically equal any of the Listings, without specific reference to a particular Listing. *Burnett*, 220 F.3d at 119-120. Such a general statement was deemed to be beyond meaningful review. *Id.* This case is markedly different from *Burnett*, since the ALJ specifically observed that Rickabaugh's impairments did not meet or medically equal Listings 1.00 (musculoskeletal disorders), 4.00 (cardiovascular disorders), 5.00 (digestive system disorders), 9.00 (endocrine system disorders), 11.00 (neurological disorders) or 14.00 (immune system disorders). R. p. 16. Given the ALJ's identification of the specific Listings at issue, Rickabaugh can impugn the ALJ's determination at the third step of the process only if he can either identify a different Listing that should have been considered or point to specific evidence ignored by the ALJ that should have yielded a different result with respect to one of the Listings discussed in the ALJ's opinion. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 93 (3d Cir. 2007). Rickabaugh does neither. Document No. 12, pp. 5-6. Consequently, the Court has no basis for disturbing the ALJ's findings at the third step of the sequential evaluation process.

Rickabaugh also argues that the ALJ failed to properly consider the combined effect of his impairments in determining his residual functional capacity. *Id.*, pp. 6-9. He specifically contends that the ALJ erred in failing to consider what effect his obesity had on his ability to perform work-related tasks. *Id.*, pp. 7, 9-12. In *Rutherford v. Barnhart*, 399 F.3d 546, 552-553 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit held that an administrative law judge's failure

7

to mention a claimant's obesity does not warrant a remand for further proceedings where the claimant has not expressly relied on his or her obesity as a basis for establishing functional limitations during the course of the administrative proceedings, and where he or she offers only a very generalized assertion that his or her obesity makes basic activities such as standing and walking more difficult than they would otherwise be. In contrast, the Court of Appeals held in *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504-506 (3d Cir. 2009), that a remand is required where a claimant relies on his or her obesity in order to establish functional limitations and the administrative law judge, having expressly found such obesity to constitute a "severe" impairment, nevertheless fails to account for it in determining the claimant's residual functional capacity.

The instant case is governed by *Rutherford* rather than by *Diaz*. First of all, the ALJ did not expressly find that Rickabaugh's obesity constituted a "severe" impairment at the second step of the sequential evaluation process. R. p. 15. That fact alone distinguishes this case from *Diaz*. *Diaz*, 577 F.3d at 503-505. Second, the record contains no evidence that Rickabaugh relied on his obesity to establish the existence of functional limitations during the course of the administrative proceedings. When he applied for SSI benefits, Rickabaugh did not list obesity as one of his impairments. R. p. 52. At the hearing, Rickabaugh did not attribute his back pain to his obesity. Instead, he testified that his back impairment had been caused by a serious football injury sustained when he was a teenager. R. p. 197. Even at this late stage, Rickabaugh does not link his obesity with specific functional limitations beyond those already contained within the ALJ's residual functional capacity assessment. Document No. 12, pp. 7-13. Furthermore, the ALJ specifically referenced medical evidence attributing a decrease in Rickabaugh's maximal ventilatory volume ("MVV") to his "weight." R. p. 17. Pulmonary function tests conducted on January 14, 2008, revealed a "severe

reduction" in Rickabaugh's MVV. R. p. 163. Dr. Craig W. Hartman ("Dr. Hartman") opined that this MVV reduction was "most likely related to [Rickabaugh's] weight." *Id.* The ALJ mentioned Dr. Hartman's observation in her opinion. R. p. 17. The Court notes that, after the hearing, the ALJ left the administrative record open for an additional three weeks precisely because she wanted to consider the results of Rickabaugh's pulmonary function tests. R. p. 202. Because Rickabaugh never expressly relied on his obesity as a basis for establishing work-related limitations, the ALJ adequately accounted for that impairment by incorporating Dr. Hartman's findings into her analysis. *Rutherford*, 399 F.3d at 552-553.

Rickabaugh's final argument is that the ALJ erred in determining that he was capable of performing work at the "light" level of exertion. Document No. 12, pp. 9-13. Under the Commissioner's regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). Even where a minimal amount of lifting is involved, a job is classified as "light" "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* On August 7, 2006, Dr. Dilip S. Kar ("Dr. Kar"), a nonexamining consultant, opined that Rickabaugh could occasionally lift or carry objects weighing up to twenty pounds, frequently lift or carry objects weighing up to ten pounds, and stand, walk or sit for up to six hours during the course of an eight-hour workday. R. p. 123. Dr. Kar further indicated that Rickabaugh's pushing and pulling abilities were unlimited, and that Rickabaugh had no postural, manipulative, visual, communicative or environmental limitations. R. pp. 123-125. According to Dr. Kar's consultative assessment, Rickabaugh was capable of engaging in the full range of light work.

9

Although Dr. Kar found no postural limitations, the ALJ ultimately concluded that Rickabaugh could engage in only occasional stooping, kneeling, crouching, crawling or climbing. R. p. 16. In determining that Rickabaugh could perform the duties of a "light" job, the ALJ afforded "great weight" to Dr. Kar's consultative opinion. R. p. 17. Rickabaugh faults the ALJ for relying on Dr. Kar's report. He laments that the administrative record contains no "functional capacity evaluation" report from a treating or examining physician. Document No. 12, p. 9. Rickabaugh is mistaken, however, to the extent that he believes that it was the ALJ's duty to seek such a report from a treating or examining physician. The assessment of a claimant's residual functional capacity is first used at the *fourth* step of the sequential evaluation process, at which point the burden of proof remains on the claimant. 20 C.F.R. § 416.945(a)(5)(i); *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). The burden does not shift to the Commissioner until the *fifth* step of the process, at which point the claimant's residual functional capacity has already been determined. *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003)("At the fifth step, the Commissioner bears the burden of proving that, *considering the claimant's residual functional capacity*, age, education, and past work experience, she can perform work that exists in significant numbers in the regional or national economy.")(emphasis added). Consequently, the burden was on Rickabaugh (and not on the Commissioner) to submit evidence from treating and examining sources detailing his work-related limitations.[1] *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-392 (6th Cir. 1999). Rickabaugh points to no evidence which contradicts Dr. Kar's assessment. The United States Court of Appeals for the Third Circuit has held that an administrative law judge may credit the report of a nonexamining

---

[1] Rickabaugh points out that Dr. Kar's assessment form was supplied before additional medical tests were performed. Document No. 12, p. 12. The diagnostic tests referenced by Rickabaugh, however, did not establish the existence of work-related limitations. R. pp. 144-145, 149-155.

10

consultant over the report of a treating physician where the report supplied by the treating physician is "internally contradictory."[2] *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). It follows *a fortiori* that the report of a nonexamining consultant can be credited where, as here, the record contains no contrary evidence from a treating or examining source.

Aside from the lack of medical evidence documenting work-related limitations beyond those found by the ALJ, the record contains affirmative evidence of Rickabaugh's ability to work. Between May and July of 2007, Rickabaugh worked for forty hours per week as a laborer for Penn Glen Oil. R. pp. 174-176. The position was temporary, since it was a part of a "halfway back program" associated with a drug and alcohol rehabilitation regimen. R. p. 176. Rickabaugh began collecting unemployment compensation benefits in October 2007. R. p. 178. In order to establish his eligibility for such benefits, he held himself out as being "ready, willing and able to work." R. p. 179. Moreover, while he was awaiting his hearing before the ALJ, Rickabaugh told a treating physician assistant that he was looking for a job. R. p. 147. Under these circumstances, it is beyond question that the ALJ's determination was "supported by substantial evidence." 42 U.S.C. § 405(g).

## V. CONCLUSION

The record is devoid of evidence that Rickabaugh's functional limitations exceed those incorporated within the ALJ's residual functional capacity assessment. Rickabaugh has clearly failed to establish his disability under the Act. Accordingly, Rickabaugh's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted, and the administrative decision of the Commissioner will be affirmed. An appropriate order follows.

---

[2]A report supplied by a nonexamining consultant is generally not considered to be "substantial evidence" when it contradicts a well-supported report supplied by a treating physician. *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008).

11

AND NOW, this 24th day of March 2010, this matter coming before the Court on the Motion for Summary Judgment filed by the Plaintiff (Document No. 11) and the Motion for Summary Judgment filed by the Defendant (Document No. 13), IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment is **DENIED**, and that the Defendant's Motion for Summary Judgment is **GRANTED**. The administrative decision of the Commissioner of Social Security is hereby **AFFIRMED**.

BY THE COURT:

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record